**Affidavit of David E. Furtado**

<u>I. Introduction</u>

1. Your affiant is a Special Agent with the United States Food and Drug Administration, Office of Criminal Investigations.

2. Your affiant hereby incorporates his previous affidavit, Application and Affidavit for Search Warrant, Inventory Listing of All Items Seized at Search Warrant Site, and Search Warrant which was executed on January 20, 2005 at 23 Valhalla Drive in Milford, NH.  The aforementioned documents are attached herein as Attachment B.   The Search Warrant was authorized by Magistrate Judge James R. Muirhead on January 18, 2005.  23 Valhalla Drive is the residence of Beth Handy (d/bá Alpine Pharma), a subject of the investigation. The investigation is looking into violations of Title 21, U.S.C. Sections, 353(e)(1)(A), 353(e)(2)(A), and 331(t), Title 18, U.S.C., Sections 1001, 1343, 1956(a)(1)(A)(i), and  371.  Your affiant's prior affidavit set forth evidence that Handy, a licensed wholesaler for prescription drugs in New Hampshire, was distributing Serostim, a prescription drug for the treatment of HIV-associated wasting, using false pedigrees.  One of the customers that purchased Serostim from Handy received  false pedigrees (also from Handy) indicating that JM Blanco of Puerto Rico was an Authorized Distributor and Droguería Javiness was a Licensed Wholesaler.  As indicated in my previous affidavit, JM Blanco is not on Serono's (the drug's manufacturer)  Secured Distribution Network which was implemented in October 2002 and Serono has no records of Droguería Javiness, Beth Handy or her company ever having purchased Serostim.[1]

---

[1]   Your affiant notes that when Serono implemented the Secured Distribution Network, Serono no longer considered JM Blanco an authorized distributor of Serostim.  Further, when the Network was implemented Serono drop shipped all Serostim to its contracted pharmacies.  Prior to October 2002, J.M. Blanco was an authorized

3. My previous affidavit outlined Handy's offer to sell Serostim to Michael Carlow at below market prices in December 2002.  In July 2003, the State of Florida indicted Carlow on charges which included grand theft of legend drugs, mail fraud pertaining to prescription drugs that were either counterfeit, relabeled, stolen, illegally purchased from Medicaid recipients, illegally purchased from unlicenced persons, illegally imported into the United States, stored in unlicenced facilities, or sold with false, fraudulent, or forged documentation.

4. My previous affidavit  indicated that Thomas Martino was one of Handy's frequent customers.  In July 2003, the State of Florida also indicted Martino as part of the same case for which Carlow was indicted.

## II.  Purpose of the Affidavit

5.  Your affiant submits this Affidavit establishes probable cause in support of an application for a search for emails on (1) Beth Handy's email accounts at  handybeth@aol.com and

---

distributor for Serono and during the search warrant a letter from Serono dated April 19, 2002 was found addressed to "Dear Wholesaler/Pharmacist" indicating that J.M. Blanco was an authorized wholesaler.  J.M. Blanco has confirmed, however, that it has never had an account with Droguería Javiness with respect to Serostim.

AlpinePharma@aol.com, maintained at America Online and (2) Tom Lavery's[2] email accounts at drtomlavery@cox.net, maintained at Cox, and Drtom#2@verizon.net, maintained at Verizon. The information set forth in this Affidavit is a result of your affiant's personal knowledge through direct participation in this investigation, the review of various records and documents obtained and prepared during the course of the investigation, and discussions with other law enforcement officers. As this affidavit is only intended to establish probable cause for a search of the subject emails, your affiant has not set forth all the information that he and other law enforcement officers have learned during this investigation.

III.  Applicable Statutes

6. This affidavit is submitted in support of a Search Warrant for the aforementioned email accounts for evidence of the commission of a criminal offense, fruits of crime, other items illegally possessed, and property designed for use, intended for use, or used in committing a crime, pursuant to violations of Title 21, U.S.C., Sections 353(e)(1)(A) and 331(t), relating to drug "pedigrees", Title 21, U.S.C., Sections 353(e)(2)(A) and 331(t), relating to unlicenced wholesale distribution of prescription drugs, Title 18, U.S.C., Section 1001 relating to false statements, Title 18, U.S.C., Section 1343 relating to wire fraud, Title 18, U.S.C., Section

_____

[2] Lavery was interviewed in September of 1998 in relation to another, separate investigation. During the interview, Lavery acknowledged that in 1992 he was convicted for Medi-Cal insurance fraud perpetrated by another business he owned at the time.  As a result of his conviction, Lavery was incarcerated for two years in California state prison.

Further, during this earlier investigation, the California State Chiropractic Examiners Board was contacted in relation to Lavery portraying to be a Chiropractor.  FDA/OCI agents were informed that Lavery is known to the Board's Enforcement Unit, and that Lavery is not a licensed chiropractor.  According to an Enforcement Coordinator of the Board, Lavery applied for a license in 1995 but was denied based upon an extensive criminal history, including impersonating a doctor and Medi-Cal fraud.

1956(a)(1)(A)(i) relating to financial transactions involving proceeds of a specified unlawful activity (wire fraud) with the intent to promote the carrying on of specified unlawful activity, and Title 18, U.S.C., Section 371, relating to conspiracy to commit any/all of the above violations.  The email accounts listed in Section II above were in records obtained during a previous search of Handy's residence at 23 Valhalla Drive, Milford, NH.

### IV. Current Investigation

### A..  Tom Lavery, Robert McFadden, & Las Palmas Marketing Group, Inc.

7. On August 29, 2002, an FDA/OCI Special Agent met with Peter Gonzalez[3] regarding the sale of large quantities of Serostim by Dr. Tom Lavery of Las Palmas Marketing Group, Inc.  Lavery is not licensed to distribute prescription drugs.  Gonzalez stated that Lavery could supply him with 250 boxes of Serostim per week at $875 per box.  Gonzalez had received this offer by fax on August 26, 2002.  The fax (which was provided to law enforcement by Gonzalez), from Dr. Tom Lavery of Las Palmas Marketing Group, Inc., listed an address of 1111 E. Tahquitz Canyon Way, Suite 209, Palm Springs, CA  92262, and provided two phone numbers 760-831-3280 and 800-673-1635, and a fax number of 760-327-6491.  It appears that Lavery mistyped his fax number as 760-327-6491 when it should have been 760-327-6591.  This is  based  on later correspondence from Las Palmas Marketing listing a fax number of 760-327-6591.  Further, the header on the fax indicates the fax was sent from fax number 760-327-6591 and stated McFadden & Associates.  "McFadden" is actually Robert McFadden, a California lawyer, who is not licensed to distribute prescription drugs.

---

[3] Peter Gonzalez, while cooperating with the government, sold Serostim to an undercover FDA/OCI agent without approval.  Prior to this, Gonzalez had offered his cooperation as stated above.  Based on Gonzalez's arrest, the government discontinued its relationship with Gonzalez.

4

8. On September 6, 2002, a consensual recorded telephone call was made by Gonzalez to Dr. Tom Lavery of Las Palmas Marketing Group at phone number 760-831-3280, Lavery's cell phone.  During the telephone call, Gonzalez and Lavery discussed the sale of 79 boxes of Serostim at a price of $800-$825 per box. Lavery also stated that the 79 boxes were in his office in California and that Lavery had 350 boxes in his possession. Further, during the call, Lavery stated, in relation to another pharmaceutical drug, that he can get "papers".  Based on your affiant's training and experience, "papers" refers to the drug pedigree for the product.  Lavery then stated that he is a partner in a wholesale company licensed in New Hampshire.  Lavery acknowledged that he was holding the product in his office even though he was not licensed and stated that he usually ships it back to the wholesaler who sells it and the paper (pedigree) comes from that wholesaler.

9. On September 13, 2002, a consensual recorded meeting was held between two undercover FDA/OCI agents, Thomas Lavery and Robert McFadden at Las Palmas Marketing Group, 1111 E. Tahquitz Way, Suite 209, Palm Springs, CA to discuss the purchase of Serostim.  During the meeting Lavery and McFadden provided the following information:

– Lavery and McFadden are in business together as partners.  McFadden is also an attorney.

– They have a wholesale company on the east coast they use for purchasing[4].

---

[4]The investigation to date has revealed that the wholesale company on the East Coast is Beth Handy d/bá Alpine Pharma.

– They work with manufacturers and that because of the buying power of the 18

wholesalers[5] they put together, they get better discounts from manufacturers.

– They were willing to sell Serostim to the undercover agents at a price of $875 per box.

Lavery then told the undercover agents that the wholesale acquisition cost was $1,400 per

box.[6]

– Lavery said they have 77 boxes on hand in the office and they can sell 250 boxes a week.

– McFadden then explained that the money is wired into his trust account and that he

acts as escrow holder.  McFadden then stated that he has a business relationship with

Lavery and acknowledges that this is a conflict of interest.  He then stated that in essence,

they use his trust account and have done this for a year and a half.  The monies are wired

into the account and the money is then disbursed.

– McFadden further explained that the money "goes to McFadden Associates Trust Client

Account because he is a client", referring to Lavery.  He then explained that their "business

partner on the east for the most part, that's just how she wants to do business.  So, we've

had a relationship with her for some time.  She places the order, we ship, it arrives, she

confirms the wire is on its way, so in that case we're backasswords, but we trust her.  She

trusts us.  We have a history."

---

[5] At this stage of the investigation your affiant has not been able to verify whether, in fact,
Lavery and McFadden conduct business with 18 wholesalers.

[6] Serono has advised that, in fact, the wholesale price per box is $1,470 and that if you pay
Serono promptly the cost per box is discounted by 2%.

– The undercover agents purchased a sample of a single box of Serostim from Lavery and

McFadden for $800.  The agents requested and received a receipt for the purchase signed by

RJ McFadden.

10. In November 2002, the California State Board of Pharmacy certified that Las Palmas

Marketing Group, Inc, and Robert McFadden and Associates, both at 1111 E. Tahquitz Canyon

Way, Suite 209, Palm Springs, CA are not licensed by the California State Board of Pharmacy.

Further, it certified that Thomas Lavery is not licensed with the California State Board of

Pharmacy and the records of the California State Board of Pharmacy show that he is not a

principal on any license issued by the California State Board of Pharmacy.  Therefore, neither

Las Palmas Marketing Group, Inc,  Robert McFadden and Associates, nor Thomas Lavery were

licensed at the time to engage in the wholesale distribution of prescription drugs.


## B. False Pedigrees

11.   On June 16, 2003, Chief Compliance Investigator Peter Grasso of the New Hampshire

Board of Pharmacy spoke to Ellen Rosenberg, attorney for drug manufacturer Serono in relation

to Handy's application to renew her wholesale license (see attached Affidavit for further details

of Grasso's inspections).  Grasso provided Rosenberg with information he had obtained from the

Alpine Pharma pedigree.  Specifically, Grasso told Rosenberg that the Authorized Distributor

listed on the pedigree was JM Blanco, Diana St #21, Amellia Ind. Ctr., Guaynabo, PR 00968 and

the Licensed Wholesaler was listed as Droguería Javiness, Calle De Diego 488, Rio Piedras, PR

00967.  Rosenberg explained that due to some alleged counterfeiting, Serono modified its

distribution system, effective in October of 2002 and explained the modified distribution system

as follows:

7

Serostim is only distributed in the United States by contracted retail pharmacies with no

wholesalers involved; these contracted distributors are paying about $1,500 per package of

7 - 6mg vials (7 vials each with 6mg); and all product is shipped airfreight directly from the

manufacturer in Puerto Rico, and drop shipped to the contracted distributor.


12.   On December 8, 2003,  Peter Grasso  prepared a report summarizing information he

obtained from Terry Canada, Inspector for the State of Tennessee Board of Pharmacy.  Canada

had forwarded "Pedigree" papers obtained from Medex, one of the customers that purchased

Serostim from Handy.  Specifically, the pedigrees are for four (4) transactions brokered by

Alpine Pharma and indicate JM Blanco was the AD (Authorized Distributor) and Droguería

Javiness was the AW (Authorized Wholesaler) for the Serostim purchased by Medex, brokered

through Beth Handy d/bá Alpine Pharma. The four transactions occurred between January and

May 2003.  On three of the pedigrees (meaning three of the transactions), in addition to

indicating that the authorized wholesaler and authorized distributor are as indicated above,  there

is a notation indicating that these pedigrees are the same for all of the Serostim orders. Your

affiant believes that this means that the pedigree was the same for all the Serostim distributed by

Handy to her customers.


13. On June 23, 2004, a subpoena was served on J.M. Blanco (now Amerisource Bergen), Diana

Street #21, Amellia Industrial Center, Guaynabo, Puerto Rico requesting documents indicating

the sale of Serostim to Droguería Javiness and/or Alpine Pharma for the period January 1, 2002

through the present.  In a letter dated June 29, 2004, Felicia Rogers, Regulatory Affairs for

Amerisource Bergen, responded to the subpoena by confirming that JM Blanco has no account with Droguería Javiness in Rio Piedras, PR or Alpine Pharma in Milford, NH.

14. On this same day, a subpoena was served on Droguería Javiness (now Domel Laboratories), Calle De Diego 488, Rio Piedras, Puerto Rico requesting documents for the sale of Serostim to the following companies for the period of January 1, 2002 through June 18, 2004:  Alpine Pharma, Optia Medical, Medex, Medex Biopharm, TXRX, and Medical Center Pharmaceuticals. In response to the subpoena requesting documents for the sale of Serostim,  Droguería Javiness responded that it has never bought or sold Serostim, nor has it had any dealings with Alpine Pharma of Milford, NH or any of the aforementioned companies.

15. On January 4, 2005, your affiant contacted Rosenberg who provided the following information:

> JM Blanco has never been in Serono's Secured Distribution Network since the system was implemented in October 2002.  Further, Droguería Javiness, Alpine Pharma, and Beth Handy have never been in the Secured Distribution Network and Serono has no records of any of these three entities/persons ever having purchased Serostim from Serono.

## C. Search Warrant at Beth Handy's Residence and Statement of Handy

16.  On January 20, 2005 your affiant along with other law enforcement agents executed a Search Warrant at 23 Valhalla Drive, Milford, NH.  During the warrant, Handy provided information about her business dealings as well as information she maintains on her computer.

9

Prior to her making the statement, the agents advised Handy that she was not under arrest and that she was free to leave whenever she wanted.   Handy stated that she had an email account with America Online.  Further, she stated that the information she used to create the drug pedigrees was provided to her by Thomas Lavery.

17.  During the search, Handy was interviewed and relayed the following information:

Handy said that she was a broker of wholesale pharmaceuticals and she only put information on the drug pedigrees that was given to her by Dr. Thomas Lavery.

She had been told by Lavery that the Serostim she had been brokering was being shipped from Droguería Javiness in Puerto Rico.

Handy explained that the sales of Serostim that she brokered were purchased from Droguería Javiness and that Droguería Javiness shipped the products directly to her customers (Handy also said that she never spoke to this company directly and that this information was provided to her by Lavery).

Handy said that she did not know the wholesale price of Serostim and estimated that the wholesale price was around $800 to $1,000 per box but she was not sure.  Handy also said she was not aware that Serono only distributed through Contracted Distributors.

Handy started her business in 2002 and spoke to Lavery about selling Serostim.  Handy knew that Lavery was not a licensed wholesaler but Handy did not think he needed to be licensed as he was only a pharmaceutical broker as opposed to a wholesaler.

Handy said that Lavery was conducting his brokering business with a partner named Robert McFadden, an attorney.  McFadden and Lavery had formed a company called Las Palmas Marketing in Palm Springs, California.  Handy thought Lavery and McFadden were getting the Serostim from Droguería Javiness because that's what she had been told by Lavery.  She said she had created the pedigrees based solely on what Lavery and McFadden had told her.

Handy told Lavery that she would need a paper trail indicating where the Serostim came from so that she could create a pedigree for her customers that were buying Serostim. Handy  explained the process as follows:

> Handy would fax a purchase order which she referred to as a packing slip to Lavery through McFadden.  This packing slip would show who the customer was and how much Serostim they wanted.  McFadden would then tell Lavery about the order and Lavery would call the supplier and place the order.  Based on what she was told by Lavery, she assumed that the supplier was Droguería Javiness.  The customers would then pay Handy and she would then pay Lavery through McFadden.  Handy said that in a way, Lavery and McFadden were extending her credit on the purchases made by the customers.

11

Handy said that the invoices in her possession for Serostim purchased from Droguería Javiness were "dummy" invoices that she had made up herself for record keeping purposes. Handy would ask Lavery for the invoice numbers and she would use those to make up the dummy invoices. Handy said she never received real invoices from Lavery or Droguería Javiness. At Handy's request, Lavery would fax her a handwritten pedigree which Handy would then type up on the computer in order to make it look professional. Handy would then give this pedigree to her customers. Handy said she thought Lavery was an authorized agent or broker for Droguería Javiness. Lavery and McFadden told Handy that the pedigree chain was accurate, and she had prepared the pedigree based on information from them.

## D. Emails

18.   During the search, numerous documents were seized along with several printouts of emails Handy received from Lavery at email address Drtomlavery@cox.net. The emails show that Handy and Lavery were communicating via email to further their scheme to distribute Serostim and potentially other pharmaceutical drugs. In this regard, your affiant notes that, as stated previously, Beth Handy has been engaged in the distribution of Serostim with False Pedigrees and Tom Lavery has been engaged in the unlicensed wholesale distribution of Serostim. The following are examples of the emails:

On July 1, 2004, an email was sent from the email address of Drtomlavery@cox.net to the email address of Handybeth@aol.com providing information to Handy on a pharmacy and wholesaler where Lavery was allegedly obtaining pharmaceutical products including

Serostim.  In this email, Lavery states that he currently had 16 boxes (of Serostim) ready to go and 25 boxes on hold.

On September 13, 2004, an email was sent from the email address of Drtomlavery@cox.net to the email address of Handybeth@aol.com providing information to Handy on several pharmaceutical products available.  Further, Lavery informs Handy that the paper (pedigree) is good through Heritage and the wholesaler.

On September 14, 2004, an email was sent from the email address of Drtomlavery@cox.net to the email address of Handybeth@aol.com informing Handy of pharmaceutical products currently available.

In addition to the above emails, during the search of Handy's residence, several additional email accounts were found in Handy's documents including the following:

On two Alpine Pharma business cards, one listing Beth Handy as President and CEO and another listing the name Dr. Tom Lavery, there was an email address listed of Alpinepharma@aol.com.

Also listed in Handy's address book, was contact information for Dr. Tom Lavery including address and phone information as well as an additional email address of DrTom#2@verizon.net.

13

19.  During the search, numerous documents were seized along with printouts of emails Handy received from Michael Carlow at email address mcarlow@hotmail.com and Thomas Martino at email address thomasmartino@earthlink.net.  As stated previously, Carlow was indicted in July 2003 by the State of Florida on charges which included grand theft of legend drugs, mail fraud pertaining to prescription drugs that were either counterfeit, relabeled, stolen, illegally purchased from Medicaid recipients, illegally purchased from unlicenced persons, illegally imported into the United States, stored in unlicenced facilities, or sold with false, fraudulent, or forged documentation.  Further, Martino, one of Handy's frequent customers, was indicted as part of the same case for which Carlow was indicted.

On May 6, 2002, an email was sent from the email address of thomasmartino@earthlink.net to the email address of Handybeth@aol.com providing information to Handy regarding a drug pedigree. Handy had requested information on an address for McKesson and requested a copy of its license.  Your affiant notes that McKesson one of the largest wholesalers of prescription drugs in the country.  Martino responded back to Handy by providing the address of McKesson to be used on a drug pedigree.

On July 14, 2003, an email was sent from the email address of mcarlow@hotmail.com to the email address of Handybeth@aol.com providing information to Handy on pharmaceutical products he currently had available and approximate shipping time frames for the product.

14

In one of Handy's address books, there were several pieces of paper that listed Michael

Carlow's address of 3465 Windmill Ranch Road, Weston, FL 33331.  Also listed were

several phone numbers for Carlow including a cell phone (954-683-0866), a fax number

(954-349-2750) and an unidentified number (954-349-2740).  Also found was a piece of

paper listing Carlow's email address as MichaelCarlow@netscape.net.


E. Seized Documents


20.  During the search, numerous documents were obtained detailing the business relationship

between Beth Handy d/bá Alpine Pharma and Thomas Lavery/Robert McFadden operating as

Las Palmas Marketing Group, Inc. at 1111 E. Tahquitz Canyon Way, Suite 209, Palm Springs,

CA.  In summary, the documents indicate that Beth Handy d/bá Alpine Pharma was brokering

transactions for the drug Serostim, a human growth hormone manufactured by Serono, a

pharmaceutical manufacturer located in Rockland, Massachusetts.  The documents indicated that

Handy would arrange a sale between the end customer (generally located in Tennessee, Texas,

California, or Utah) and Lavery/McFadden.  The documents consisted of packing slips, purchase

invoices, sales invoices, faxes and emails between Handy and Lavery, and indicated that the

Serostim was coming from one of two sources:  Droguería Javiness located in Puerto Rico; or

Heritage Pharmacy located in Palm Springs, California.  Specifically, the documents indicate

that Handy was buying the Serostim from Droguería Javiness up until June 2004 and from

Heritage Pharmacy from July 2004 through at least September 2004 (the date the last invoice

was located).  However, based on information obtained in the current investigation, Droguería

Javiness never sold Serostim to Handy or to her customers (see paragraph 14) and Heritage

Pharmacy is not a licensed prescription drug wholesaler (see paragraph 30).  Further, neither of

these two companies are contracted pharmacies in Serono's Secured Distribution Network

(paragraphs 15 and 24).


### F. Serostim Transactions

21.   Based on documents obtained, Handy brokered a transaction in February 2004 involving 65

boxes of Serostim.  Documents obtained from a search of Handy's residence indicate that Alpine

Pharma purchased the 65 boxes of Serostim from a pharmaceutical wholesaler located in Texas.

However, instead of having the product shipped directly to her customer in Tennessee, she

received directions from Lavery to have the product shipped to the following:

> Alpine Pharma
> Attn:  Robert McFadden
> 1111 East Tahquitz Canyon Way
> Suite 209
> Palm Springs, CA


On February 2, 2004, Handy sent a fax to the Texas wholesaler instructing it to ship the product

to McFadden & Associates at the above address.  Included in Handy's records was a copy of an

Airborne Express receipt indicating the product had been shipped to the above address.  Handy

then prepared Packing Slip #020304A dated February 3, 2004 for a shipment of 65 boxes of

Serostim to the Tennessee company.  She next prepared an invoice dated February 4, 2004

billing the Tennessee company for the shipment of 65 boxes of Serostim at $715 per box, or a

total of $46,475.  She instructed the company to send a wire transfer to Robert McFadden,

Attorney, Client Trust Account, Washington Mutual, Routing Number 321180748, Account

Number 8790093062.  Instead of paying by a wire transfer, the Tennessee company sent a check

to Beth Handy d/bá Alpine Pharma.  When the check cleared Handy's bank, on February 24, 2004 she faxed a sheet to Las Palmas Marketing, Attention Dr. Tom Lavery, indicating that she sent the wire transfer on that day.  She further asked Lavery how many boxes would be going out that week to the Tennessee company.

22. During the search, numerous invoices were found reflecting the purchase of Serostim by Handy for sale to various customers. Specifically, 33 invoices were found reflecting purchases of Serostim between January 2, 2003 and June 3, 2004 for which Handy listed Drogueria Javiness on the invoice.  These invoices reflected the purchase of 1,477 boxes of Serostim by Handy. Further, during the search, 4 invoices were found documenting the purchase of Serostim between July 9, 2004 and September 23, 2004 for which Handy listed Heritage Pharmacy on the invoice. These invoices reflected the purchase of 68 boxes of Serostim by Handy.  Further, during the search, invoices were found purported to reflect the sale of the above Serostim by Handy to her customers totaling approximately $1.3 million.

23.   Based on documents obtained, Tom Lavery emailed Beth Handy on July 1, 2004 from his email account (drtomlavery@cox.net).  In the email, Lavery provided the name and address of Heritage Pharmacy but provided his cellular telephone number as the phone number for Heritage Pharmacy.  Further, he told Handy that he will get a copy of the license (referring to Heritage) when he was in Palm Springs.  Lavery then stated that he has 16 boxes ready to go and 25 on hold, that he would like to move the 16 ASAP and ship the 25 early next week.  According to records obtained from a search of Handy's residence, she sold 16 boxes of Serostim to her customer in Tennessee on July 9, 2004.  According to Handy's invoices, she purchased the

Serostim from  Heritage Pharmacy.  Further, this is the first invoice found in which Handy lists

Heritage Pharmacy as the company she purchased the Serostim from.

24.  On February 17, 2005, your affiant met with Rosenberg who confirmed that Heritage

Pharmacy is not a contracted pharmacy in Serono's Secured Distribution Network.

25.   Based on documents obtained, Handy sold 25 boxes of Serostim to a company in Utah in

September of 2004.  On September 22, 2004, Handy faxed a document to her customer

informing the customer to wire the proceeds to the McFadden & Associates client trust account.

Further, during the search an invoice was found dated 9/22/04 which implies that Alpine Pharma

purchased 25 boxes of Serostim from Heritage Pharmacy and had the product drop shipped to

the Utah customer.   On September 27, 2004, Handy faxed a document to Tom Lavery (and also

listed Heritage Pharmacy on the "send to" line) telling Lavery that her customer has been calling

her for the shipping info and asking if the product has been shipped.  On September 28, 2004,

Handy faxed a document to her customer indicating that she called yesterday to get the shipping

information on the Serostim and that the "shipping guy was out sick yesterday, hence your order

did not go out."

26.   During the search, a letter was found dated January 7, 2005, that Beth Handy received from

LPMG (believed to be Las Palmas Marketing Group).  The letter was sent from "Tom".  The

letter provides a listing of numerous prescription drugs available and states these are the

products that are available now, that next week he will have more oncology drugs and in two

weeks he will have some anti-virals available.  He further states the products come from a licensed wholesaler and have a paper-trail.  He also tells Handy that he will send her the license.

27.   A cooperating witness[7] was interviewed in early 2005 in reference to the witness' knowledge of a number of individuals involved in the diversion of pharmaceuticals.  During this interview, the witness explained that she/he went to various nutritional and vitamin supplement stores to obtain Serostim.  These stores were obtaining Serostim from HIV patients.  The witness further said that California patients who were on Medicaid were restricted to four boxes of Serostim a month.  According to the witness, this was an excessive amount and allowed the patients to sell off some of their Serostim.  The witness, along with her/his partner, were selling Serostim to Lavery for $600 per box.  The witness said that McFadden was an attorney for Las Palmas Marketing and that McFadden and Lavery paid the witness from a trust account for the company.  The witness said that any product returns went to Lavery.  The witness said that on one occasion she/he was not paid for a Serostim shipment and stopped doing business with Lavery for a period of time.

The witness said that about eight (8) months ago Lavery tracked her/him down and said he was interested in buying Serostim again.  Over the past eight months, the witness has sold Serostim to Lavery on approximately five occasions at $675 per box.  The witness said that Lavery owed

---

[7]It should be noted that the CW is the target of a separate Federal investigation involving diverted pharmaceuticals and that charges are expected to be brought against the CW in another district.   The above statements were provided by the CW as part of his/her cooperation with the government.  During a proffer, the CW stated that she/he had perjured himself/herself during prior grand jury testimony involving this separate investigation and that he/she had not been honest when previously interviewed by a Federal agent.

her/him money for  approximately thirty-seven (37) boxes of Serostim recently sold to Lavery.

28.   According to invoices obtained in the search of Handy's residence, Alpine Pharma has

brokered numerous transactions for Serostim over the past eight months.  The last two

transactions were brokered in August and September of 2004 for a total of 38 boxes of Serostim.

The first transaction was recorded on Alpine Pharma invoice number 083004A and was dated

8/30/04.  The documentation indicates the source of the Serostim as Heritage Pharmacy and was

sold to her customer in Tennessee.  The sale totaled $10,595 for 13 boxes of Serostim at $815

per box.  The second transaction was recorded on Alpine Pharma invoice number 092304A and

was dated 9/23/04.  The documentation indicates the source of the Serostim as Heritage

Pharmacy and was sold to her customer in Utah.  The sale totaled $23,750 for 25 boxes of

Serostim at $950 per box.  Both of these transactions are at amounts significantly below the price

at which Serostim is sold by Serono to its contracted pharmacies.  Further, as noted earlier ,

Heritage pharmacy has never been in Serono's Secured Distribution Network as a contracted

pharmacy.

G. Licensing Issues

29.  On January 21, 2005, a search of the California Board of Pharmacy's web site revealed that

Las Palmas Marketing Group, Inc., Robert McFadden and Associates, and Thomas Lavery are

not licensed or registered with the Board as wholesale distributors of prescription drugs.

30.   According to records maintained by the California Board of Pharmacy, Heritage Pharmacy is a licensed Retail Pharmacy located in Palm Springs CA.  However, based on a search of California License Records, Heritage Pharmacy is not a licensed wholesale distributor of prescription drugs.

H. Bank Accounts

31.   According to the Bank of New Hampshire, Beth Handy has signatory authority over account number 924-0450504 and the account is in the name of Beth Handy d/bá Alpine Pharma, 23 Valhalla Drive, Milford, NH.  Analysis of this account indicates for the time period of February 22, 2002, the date the account was opened, through March 9, 2004, approximately $2.7 million was deposited into this account (including approximately $2.3 million in wire transfers) while approximately $2.1 million was wired out of this account.  Of the $2.1 million, approximately $1.7 million was wired into bank account number 879-009306-2, entitled McFadden and Associates client trust account, 1111 E. Tahquitz, Canyon Way, Suite 209, Palm Springs, CA.

VII.  Conclusion

32.  Based on the foregoing, your affiant has probable cause to believe that Handy:

(1) created and distributed pedigrees that failed to accurately state the names and addresses of all parties who previously sold, purchased, or traded the drug in violation of Title 21, U.S.C., Sections 353(e)(1)(A) and 331(t).  Specifically, Handy provided pedigrees indicating that the Serostim she sold came from Droguería Javiness in Puerto Rico when in fact it did not.

(2) violated Title 18, U.S.C., Section 1001 by creating a false writing or document that contains a materially false statement in a matter within the jurisdiction of the United States Food and Drug Administration, a federal agency, when she provided pedigrees containing false information to the persons who purchased Serostim from her.

(3) faxed these false pedigrees using a fax number from the subject premises in violation of Title 18, U.S.C., Section 1343 and that the proceeds of these transactions were transmitted via wire transfer into Handy's bank account in violation of Title 18, U.S.C., Section 1956(a)(1)(A)(i).

33.   Based on the foregoing, your affiant has probable cause to believe that Lavery, McFadden, and Las Palmas Marketing Group, Inc:

(1) engaged in the unlicensed wholesale distribution of prescription drugs by possessing the prescription drug Serostim and distributing this drug in violation of  Title 21, U.S.C., Sections 353(e)(2)(A) and 331(t) and Title 18, U.S.C., Section 371;

(2) conspired with Handy to create false pedigrees by telling Handy the prescription drug Serostim was coming from Droguería Javiness when this company informed the government that it never bought or sold Serostim and never had any dealings with Alpine Pharma, in violation of Title 21, U.S.C., Sections 353(e)(1)(A) and 331(t) and Title 18, U.S.C., Section 371;

 (3) conspired with Handy to create false pedigrees by telling Handy the prescription drug Serostim was coming from Heritage Pharmacy when in fact this was not the case [the drug was actually coming from a  cooperating witness], in violation of Title 21, U.S.C., Sections 353(e)(1)(A) and 331(t) and Title 18, U.S.C., Section 371;

(4) conspired with Handy to commit wire fraud and money laundering by using

McFadden's client trust account to promote or carry on the illegal activity, in violation of

Title 18, U.S.C., Sections 1343, 1956(a)(1)(A)(i), and 371.

Date: _____                    _____/S/ David E. Furtado_____
                                         David E. Furtado
                                         Special Agent
                                         Food and Drug Administration
                                         Office of Criminal Investigations

Sworn and subscribed to before me this _____ day of March, 2005.

                                         _____
                                         Steven McAuliffe
                                         United States District Court Judge

23